UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America,<br>           Plaintiff, | Criminal No. 11-365 (MJD/LIB) |
| v. | **REPORT AND RECOMMENDATION** |
| Keith Brian Donnell,<br>           Defendant. | |

---

This matter came before the undersigned United States Magistrate Judge upon Defendant's Motions to Suppress Evidence Obtained as a Result of Search and Seizure executed on April 14, 2011.  The case has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.  The Court held a hearing on January 18, 2012 regarding both parties' discovery motions in this case;[1] however, regarding the suppression motion at issue, the parties agreed to submit the motions on their briefs and provide a stipulated set of facts regarding the events after the issuance of the search warrant but prior to its execution.  For the reasons outlined below, the Court recommends that Defendant's motions to suppress be denied.

**I.   BACKGROUND**

    **a.  Facts Leading to the Issuance of the Search Warrant**[2]

On April 13, 2011 at approximately 3:00 p.m., United States Magistrate Judge Mary K. Klein issued a search and seizure warrant for the property located on 32518 Highway 1 West, Red Lake, Minnesota provided that William Roy complete a confirmed transaction obtaining

---

[1] The discovery motions were the subject of a separate Order.  (See Docket No. 28).
[2] The Defendant's motion, in addition to the stipulated facts to be discussed below, was also submitted on the four corners of the search warrant and supporting affidavits which were submitted to this Court.  The following facts are derived from those materials.

narcotics from that property while under visual surveillance.  (Stipulation of Facts [Docket No. 29], Ex. 1 at 1).  Magistrate Judge Klein issued the warrant on the basis of Special Agent David LaZella's (SA LaZella) sworn affidavit.  (Id. at 3-13).

In his affidavit, SA LaZella provided that he was a Police Officer for the City of Bemidji and was federally deputized with the United States Marshal's Service and the Federal Bureau of Investigation.  (Id. ¶ 1).  He stated that while working street patrol and as a Crime Scene Assistant, he had "assisted in the execution of over 100 search warrants for a variety of other crimes" and "had made numerous arrests for narcotics crimes."  (Id.)

SA LaZella described that on or about February 7, 2011, Special Agent Jason Wambach (SA Wambach) met with a confidential informant (the CI) who agreed to introduce SA Wambach to an adult male identified as William Roy.  (Id. ¶ 3).  The CI stated that he/she had "previous personal knowledge that Roy sold illegal drugs on and near the Red Lake Indian Reservation."  (Id.)

On February 8, 2011, the CI, pursuant to his/her agreement, introduced SA Wambach to Roy at the Seven Clans Casino (the Casino), located on the Red Lake Indian Reservation boundary.  (Id. ¶ 4).  Prior to his arrival, via phone calls and text messages, Roy had indicated that at that time he was not in possession of any marijuana for sale.  (Id.)  Instead, he advised that "he would have to travel approximately twelve (12) miles each way from [the Casino] to obtain marijuana from his source."  (Id.)  SA Wambach accepted Roy's explanation, and approximately thirty-five minutes later, Roy arrived in the parking lot of the Casino, where SA Wambach made "a controlled purchase for approximately one quarter (1/4) pound of marijuana from Roy for three hundred ($300) dollars."  (Id.)

Five days later, on February 13, 2011, SA Wambach again met with the CI who confided that he/she knew, and would be willing to show, "where Roy's marijuana source lived on the Red Lake Indian Reservation." (Id. ¶ 5). Though the CI admitted that he/she had never been inside the house itself, on several occasions he/she had waited just outside the house while Roy entered the residence to purchase marijuana. (Id.) The CI further provided that this residence was approximately twelve miles from the Casino and that "Keith" was the first name of the source in the home who provided the marijuana to Roy. (Id.) The CI took SA Wambach to a single family residence located on Minnesota State Highway 1, approximately twelve miles from the Casino. (Id. ¶ 6). The residence was one-half mile from a green Clearwater County road sign and on the north side of the highway adjacent to the lower Red Lake. (Id.) The residence was in a wooded area adjacent to the shore of Lower Red Lake. (Id. at 8).

From the time of his initial contact up to the time of the application for the search warrant, SA Wambach remained in contact with Roy and made two additional controlled purchases of prescription medication directly from Roy. (Id. ¶ 7). Also, in the course of numerous phone, text, and person-to-person communications, Roy indicated that he "had a marijuana source on the reservation from whom he could purchase multiple pounds of marijuana." (Id.)

Subsequently, during an interview of an adult male in custody at the Red Lake Adult Detention Center, in an unrelated case, SA Wambach independently learned from that individual that "Keith Donnell sold marijuana on the reservation in multiple pound amounts." (Id. ¶ 8). Then, on April 12, 2011, SA LaZella "received the results from an administrative subpoena served on Beltrami Electrical Company regarding a customer identified as Keith Brian Donnell." (Id. ¶ 9). The results of the subpoena indicated that Donnell, at that time, had active electric

service at 32518 Hwy 1 W, Red Lake, Minnesota. Using Satellite mapping from the Beltrami County Geographical Information Services, SA Wambach was able to confirm the residence location, and determine that the pole number for electric service was located two residences west of the Clearwater County boundary line on Minnesota Trunk Highway 1, Red Lake. (Id.) Subsequently, on April 12, 2011, SA LaZella drove to Donnell's residence to obtain a photograph of the residence from the street. (Id.)

Based on the above facts, SA LaZella believed that Keith Donnell was the source for Roy's marijuana and requested an anticipatory search warrant for his residence. (Id. ¶ 10). Magistrate Judge Klein issued the anticipatory search warrant which was premised, on its face, on the condition that "William Roy [be] able to complete a confirmed transaction for narcotics while under visual surveillance." (Stipulation of Facts [Docket No. 29], Ex. 1 at 1).[3]

### b. Facts After the Issuance of the Search Warrant but Prior to Its Execution

The United States of America and Defendant submitted a stipulation of facts regarding the events after the issuance of the search warrant but prior to its execution. (See Docket No. 29). The Court adopts the parties' stipulation verbatim:

> On April 11, 2011, Headwaters Safe Trails Task Force SA LaZella received information from SA Wambach that while SA Wambach was acting in an undercover capacity, SA Wambach made contact with Roy and made arrangements to take delivery of approximately two pounds of marijuana on April 13, 2011, upon payment of $2100 (investigative fund money) to Roy.
>
> On April 13, 2011, at approximately 8:58 p.m., SA Wambach, acting in an undercover capacity, made contact with Roy while parked in the southern most portion of the 7 Clans Casino parking lot located near Red Lake, Minnesota. During the course of conversation

---

[3] The affidavit filed in support of the request for the anticipatory search warrant described the trigger condition for the warrant as involving: (1) law enforcement "maintain direct visual surveillance of Roy's vehicle from the time SA Wambach provides the investigative funds to Roy for the purchase of marijuana up until Roy's vehicle arrives at Donnell's residence"; (2) law enforcement "maintain direct visual surveillance of Roy's vehicle leaving Donnell's residence and until Roy meets again with SA Wambach"; and (3) SA Wambach "confirm receipt of some form of controlled substance from Roy, including, but not limited to marijuana." (Stipulation of Facts [Docket No. 29], Ex. 1 ¶ 10). Regarding part two, it would be "acceptable that Roy's vehicle does not travel directly back to SA Wambach's location as long as direct visual surveillance is maintained." (Id.)

and transfer of money, Roy indicated that he had to travel approximately 12 miles to get the marijuana and would return to the Red Lake Fuels convenience store, located near the 7 Clans Casino parking lot, in approximately 20 minutes to complete the transaction. Neither SA Wambach nor any other law enforcement agent searched Roy's vehicle prior to Roy's departure from the casino parking lot.

At approximately 9:01 p.m., Roy left the casino parking lot and travelled to the defendant's residence located at 32518 Highway 1 West. Law enforcement maintained constant visual surveillance of Roy and Roy's vehicle from the time that Roy left the casino parking lot until Roy and Roy's vehicle reached the driveway that led solely to the defendant's residence and turned into the driveway at 9:12 p.m. Immediately prior to Roy's vehicle turning onto the driveway from Highway 1, another unidentified vehicle turned onto the driveway that led to the defendant's residence.

At approximately 9:18 p.m., law enforcement agents posted in the brush on the south side of Highway 1 across from the driveway to the defendant's residence alerted other agents that Roy's vehicle was leaving the residence. Law enforcement agents posted in the brush did not observe Roy after his vehicle pulled into the driveway until Roy's vehicle began exiting the driveway. Thus, law enforcement did not observe a hand-to-hand drug transaction between Roy and Donnell. Subsequently, law enforcement maintained constant visual surveillance of Roy's vehicle from the time that Roy left the defendant's driveway until Roy's vehicle returned to the Red Lake Fuels convenience store parking lot and parked next to SA Wambach's vehicle at approximately 9:32 p.m.

Upon meeting with SA Wambach in the Red Lake Fuels convenience store parking lot, Roy provided SA Wambach with two blocks of suspected marijuana weighing 31.4 ounces or approximately 2 pounds. After the transaction was completed, SA Wambach left the parking lot at 9:38 p.m., and Roy left the parking lot at 9:40 p.m.

On April 14, 2011, at approximately 12:40 p.m., law enforcement executed the search warrant previously issued by Magistrate Judge Klein at the defendant's residence located at 32518 Highway 1 West in Red Lake, Minnesota. At the time of execution, the defendant was present at the residence and provided a post-Miranda statement to law enforcement. During the execution of the search warrant, law enforcement located approximately 5 pounds of marijuana, 5 firearms and $12,622.00 in U.S. currency, which included $2,000 of the investigative fund money given to Roy by SA Wambach during the controlled narcotics transaction on April 13, 2011.

(Stipulation of Facts [Docket No. 29] at 2-4).

## II.   DISCUSSION

Defendant argues that the search of Defendant's residence violated his Fourth Amendment because the officers lacked probable cause to execute the search. (Def.'s Brief in Supp. of Suppression of Evidence and Statements [Docket No. 30] at 1). First, he argues that not all prerequisite conditions of the anticipatory search warrant were met. (Id. at 5). Second, he argues that the requirement that law enforcement "confirm receipt of some form of controlled substance from Roy" was vague and insufficient to create probable cause. (Id.)

The Government argues that all the triggering conditions for execution of the anticipatory search warrant were met and that the totality of circumstances provided probable cause. (Gov't Mem. of Law in Opp'n to Def.'s Mot. to Supp. Evidence and Statements [Docket No. 31] at 5).

### a. The Triggering Conditions for Execution of the Anticipatory Search Warrant were Satisfied.

"An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." United States v. Grubbs, 547 U.S. 90, 94 (2006) (internal quotation marks omitted).

Defendant does not challenge the trigger condition of the search warrant which required that law enforcement "maintain direct visual surveillance of Roy's vehicle from the time SA Wambach provides the investigative funds to Roy for the purchase of marijuana up until Roy's vehicle arrives at Donnell's residence." Indeed, the stipulated facts establish that this condition was satisfied: "Law enforcement maintained constant visual surveillance of Roy and Roy's vehicle from the time that Roy left the casino parking lot until Roy and Roy's vehicle reached the driveway that led solely to the defendant's residence and turned into the driveway at 9:12 p.m."

Another trigger condition required that law enforcement "maintain direct visual surveillance of Roy's vehicle leaving Donnell's residence and until Roy [met] again with SA Wambach."  Defendant argues that this condition was not satisfied because "law enforcement did not see Roy enter or exit Donnell's *residence*," (Def.'s Brief in Supp. of Suppression of Evidence and Statements [Docket No. 30] at 5) (emphasis in original), rather Defendant argues they merely observed him enter and leave the driveway of the residence.  Defendant, appears to contend that the term "residence" in the search warrant referred only to the physical home itself and not the property, curtilage, or driveway, and as such, Defendant appears to contend the search warrant required law enforcement to observe "Roy enter Donnell's [physical home]."  Defendant's argument depends upon a hypertechnical reading of the warrant.  However, the Court's standard of review requires only that a search warrant affidavit be "examined under a common sense approach and not in a hypertechnical fashion," United States v. Soloman, 432 F.3d 824, 827 (8th Cir. 2005).  In reading the plain language of the warrant at issue in this case, the Court refuses to read such hypertechnical language proffered by Defendant into the warrant and finds that a common sense reading of the warrant only required law enforcement to observe Roy's vehicle leaving the residential property of Defendant, which would include the driveway that exclusively led to Defendant's house.  See United States v. Tagbering, 985 F.2d 946, 950 (8th Cir. 1993) ("Courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than commonsense, manner.") (internal quotation marks omitted).

Finally, a third triggering condition challenged by Defendant required that SA Wambach "confirm receipt of some form of controlled substance from Roy, including, but not limited to marijuana."  Though Defendant generally argues that this requirement is not met, (Def.'s Brief in Supp. of Suppression of Evidence and Statements at 5), Defendant does not provide specific

reasoning or argument as to why this condition was not met. Nevertheless, the stipulated facts again confirm that this triggering condition was satisfied: "Upon meeting with SA Wambach in the Red Lake Fuels convenience store parking lot, Roy provided SA Wambach with two blocks of suspected marijuana weighing 31.4 ounces or approximately 2 pounds."

### b. Probable Cause Supports the Execution of the Search Warrant.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. It further provides that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." Id. Probable cause exists when "a practical, common-sense" evaluation of "all the circumstances set forth in the affidavit," demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Gates, 462 U.S. at 231). The sufficiency of a search-warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (internal quotation marks omitted). "A magistrate's determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236.

First, Defendant argues that the affidavit in support of the search warrant does not demonstrate that the information from the initial CI, who alerted law enforcement to Roy, was reliable. (Def.'s Brief in Supp. of Suppression of Evidence and Statements at 2-3). Defendant argues that in this case, unlike United States v. Wiley, 475 F.3d 908, 911 (7th Cir. 2007), "the confidential informant's reliability [is not] bolstered by corroboration from police investigations,

by statements from other informants," and there appears to be no evidence to demonstrate that the informant's statements were against his penal interest. (Def.'s Brief in Supp. of Suppression of Evidence and Statements at 3). Even if that were the only standard to evaluate whether probable cause exists based on an informant's statement, the Court disagrees.[4]

The CI who led law enforcement to Roy confided to SA Wambach that he had "previous personal knowledge that Roy sold illegal drugs on and near the Red Lake Indian Reservation." Over the course of several subsequent controlled buys, in the course of the police investigation, Roy sent text messages and made phone calls expressing that he could obtain and sell marijuana. Furthermore, law enforcement completed a controlled buy of one-quarter pound of marijuana from Roy on February 8, 2011. The police investigation therefore corroborated the CI's initial statement that Roy sold marijuana.

Additionally, during an unrelated interview at the Red Lake Adult Detention Center, an adult male in custody informed SA Wambach that "Keith Donnell sold marijuana on the reservation in multiple pound amounts." This independent statement provides additional circumstantial information which tends to bolster the CI's statement that "Keith" was the first name of the person who provided marijuana to Roy. Previously, the CI had taken SA Wambach to "Keith's" residence, where the CI had reported personally observed Roy on other occasions enter the house and exit it with drugs. Based on the interview of the adult at Red Lake Adult Detention Center, who identified "Keith Donnell" and an admin subpoena of the electrical service which identified the name of service on the residence as Keith Donnell, SA Wambach was able to confirm the residence identification provided by the CI.

---

[4] Additionally, the Court notes that Defendant's memorandum appears to confuse the CI, who led law enforcement to Roy, and Roy himself. Thus, although Defendant appears to treat Roy as a confidential informant, in this Order, the Court refers to the individual who led law enforcement to Roy as the CI and refers to Roy as Roy.

"When a confidential informant provides information in support of a search warrant, the issuing magistrate considers the informant's reliability and the basis of his knowledge." United States v. Butler, 594 F.3d 955, 962 (8th Cir. 2010). However, the law does not require that every statement made by the CI be supported by corroborating evidence. See id. ("The totality of the circumstances analysis applicable to probable cause determinations, however, does not mandate that both factors be present before a warrant may issue."); United States v. Harris, 557 F.3d 938, 940-41 (8th Cir. 2009) (affirming a denial of Defendant's motion to suppress and explaining that "[a]n informant is sufficiently reliable if the informant has provided reliable information in the past **or** if details from the informant are independently corroborated." (emphasis added)); United States v. Stearn, 597 F.3d 540, 555 (3rd Cir. 2010) ("A magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause."). Analyzing the United States Supreme Court's decision in Illinois v. Gates, 462 U.S. 213 (1983), the court in Stearn explained that "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability" and "police corroboration of details of an informant's tip" [is] an important method for establishing a tip's reliability." 597 F.3d at 555 (internal quotation marks omitted).

Thus, to the extent Defendant challenges the CI's reliability (not Roy's reliability), the Court finds Defendants arguments unpersuasive. Although in this case no evidence was presented to demonstrate that the CI was acting against his/her penal interests, the Court finds that the corroborative evidence from the extensive police investigation, Roy's own admissions that he purchased and sold marijuana, and the independent statement by the other adult interviewed affirm the reliability of the CI. See Butler, 594 F.3d at 962-63 (finding an informant

reliable because his statements were corroborated by surveillance officers); United States v. Humphreys, 982 F.2d 254, 258-59 (8th Cir. 1992) ("[W]here the informants' information is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause."). Furthermore, the statements of the CI are only part of the circumstances giving rise to probable cause in this case.

Next, Defendant argues that the requirement that law enforcement "confirm receipt of some form of controlled substance from Roy" was vague and insufficient to create probable cause. In support of this challenge, Defendant asserts the following general arguments: (1) law enforcement never searched Roy's car before giving him the money for the controlled buy, and therefore, cannot be certain that Roy was not in possession of the marijuana prior to receiving the money; (2) law enforcement did not observe Roy make the transaction while on Donnell's property, and therefore, could not establish that "the drugs were obtained from Donnell"; and (3) Roy never informed law enforcement where he obtained the drugs. (Def.'s Brief in Supp. of Suppression of Evidence and Statements at 5).

The Government argues that although such arguments may be relevant to the issue of proof beyond a reasonable doubt, they do not defeat probable cause in this case. (Gov't Mem. of Law in Opp'n to Def.'s Mot. to Supp. Evidence and Statements [Docket No. 31] at 5).

The Defendant appears to incorrectly treat Roy as if he were a cooperating confidential informant. (See, e.g., Def.'s Brief in Supp. of Suppression of Evidence and Statements at 2-5) (arguing that Roy, who did not know he was under surveillance, nonetheless should have been searched and citing cases that discuss whether a confidential informant should be searched prior to a controlled buy); (Def.'s Brief in Supp. of Suppression of Evidence and Statements at 2) (citing United States v. Artez, 389 F.3d 1106, 1111-12 (10th Cir. 2004)). Defendant's arguments

11

and cases that "[c]ontrolled drug buys must follow certain basic rules in order to meet the totality of circumstances" are inapposite to the case at hand because in this case Roy was entirely unaware of the undercover investigation and can be better described as an unwitting cooperator. Therefore, unlike the confidential informants in United States v. Beck, 122 F.3d 676, 678 (8th Cir. 1997), United States v. Gibson, 123 F.3d 1121, 1123 (8th Cir. 1997), and United States v. Pennington, 287 F.3d 739, 742 (8th Cir. 2002), Roy, in this case, was not willingly cooperating with law enforcement to set up a controlled buy; rather, he was unknowingly participating in a controlled buy and took law enforcement to Defendant's home without any knowledge that he was being followed and watched. Unlike cases such as Artez, in which the confidential informant served as a knowing intermediary to contact the unwitting cooperator who then made the purchases from the target defendant, in this present case, law enforcement eliminated the first step of having the confidential informant participate in the investigation and made the contact directly with the unwitting cooperator. Therefore, because SA Wambach took the place of the confidential informant in Artez, who interacted with the unwitting cooperator, Defendant's arguments are tantamount to being that SA Wambach had to be searched prior to his interaction with Roy and SA Wambach had to tell law enforcement that he received the contraband evidence from Roy. Of course, because SA Wambach was one of the investigating officers, such a requirement would be unnecessary.

If Defendant argues that any informant, regardless if they are unwittingly or willingly cooperating, must be searched prior to a controlled buy, such an argument is without merit. Such a practice would effectively eliminate any ability for law enforcement to perform undercover investigative work to apprehend criminals higher in the source chain of contraband without first convincing a seller lower in the chain to cooperate in the investigation by allowing his

possessions to be searched prior to a controlled buy. Indeed, "[t]he Tenth Circuit and other Circuits have approved the use of unwitting informants in transactions similar to the one at issue here." United States v. Liapis, No. 2:05-cr-95-ts, 2005 WL 2177228, at *3 (D. Utah Sept. 8, 2005), aff'd 216 Fed. Appx. 776 (10th Cir. 2004) (unpublished decision).

In a case dealing with similar circumstances, this Court previously stated that "[w]here officers receive a tip that illegal drugs are being sold from a residence, and the officers promptly corroborate the tip with a successful sting operation, there is a fair probability that illegal drugs will be found on the premises." United States v. Rolla, No. 07-222, 2007 WL 3243942, at *3 (D. Minn. Nov. 1, 2007). In Rolla, law enforcement provided buy money for an informant who was cooperating with the police. Id. at *1. The informant then contacted an "unwitting person" and drove him to the defendant's residence. Id. When the informant thereafter again picked up the unwitting person, the unwitting person handed him methamphetamine and told him that he purchased the methamphetamine from the defendant. Id. Noting the reliability of the original willing informant, the Court found that probable cause existed for the search warrant to search the defendant's apartment. Id. at *3. Similarly, in this present case, law enforcement executed an undercover investigation, based on a tip from a cooperating informant whose statements were later independently corroborated, and thereafter, an unwitting informant made a controlled purchase under law enforcement surveillance that led to the search of Defendant's residence. Though in Rolla the officers observed the unwitting cooperator entering the apartment and noted the reliability of the original willing informant, there was no evidence that law enforcement searched, or attempted to search, the unwitting cooperator or the cooperative informant prior to the controlled buy. Furthermore, although "nothing in the [affidavit supporting the search warrant] excluded the possibility that the marijuana may have come from some place other than

13

[Defendant's] residence," in "viewing the totality of the circumstances related in the affidavit, rather than judging 'bits and pieces of information in isolation,'" the Court finds that law enforcement was not required to search the unwitting cooperator in order to establish probable cause.  See United States v. Jordan, 999 F.2d 11, 13 (1st Cir. 1993).

Moreover, "common sense" would work against reasoning that an unwitting individual, who has no suspicion that he is held under surveillance and who offers to sell marijuana but claims that he has none in his immediate possession, would nonetheless travel twelve miles to a residence attested by other informants (unknown to the unwitting cooperator) to be the location of marijuana sales if, as Defendant suggests, he "already had the drugs in his car at the time of the [initial] transaction."  Therefore, to the extent that Defendant argues that probable cause could never be established in this case but for a search of Roy before he set out to Defendant's residence, his argument fails.

Defendant also argues that because law enforcement did not directly observe Roy effect a hand-to-hand transaction with Defendant while in Defendant's house, they could not establish that "the drugs were obtained from Donnell."  However, the warrant did not require law enforcement to observe the hand-to-hand transfer of the drugs, and Defendant fails to cite a single case holding that to establish probable cause to search a residence, law enforcement must first personally and directly observe a contraband transaction occurring within the residence.[5] Additionally, Defendant's residence was not located on a typical suburban cul-de-sac driveway in which several neighborhood houses could easily be accessed by a quick hop over a fence or a walk through a neighbor's yard.  Thus, "the absence of constant visual contact with the

---

[5] Defendant cites Beck, in which the Court found that probable cause existed because the informant was searched prior to entering the defendant's home, entered and left defendant's home, and then turned over the contraband to law enforcement.  122 F.3d at 679.  However, the informant in Beck was knowingly cooperating with law enforcement, which allowed law enforcement to search him.  Id. at 678.  Beck does **not** stand for the proposition, however, that law enforcement **must** observe the transaction actually occurring within the residence.

14

informant conducting the transaction does not render a controlled purchase insufficient." Artez, 389 F.3d at 1112. The evidence demonstrates that the residence in this case was located in a wooded area and the driveway which Roy entered "led solely to the defendant's residence." Although another vehicle had entered Defendant's driveway shortly before Roy's arrival, this is merely one factor to consider under the totality of circumstances, which as further explained below demonstrate that probable cause existed to support the execution of the warrant. Furthermore, the warrant was not to search Defendant's person, but rather his residence. As such, probable cause is based on whether a fair probability exists of finding contraband or evidence of a crime in Defendant's residence, not whether a fair probability exists of finding that Defendant would be the person who directly sold Roy the drugs in a hand-to-hand transaction. Thus, Defendant's argument here must also fail.

On the controlled buy that resulted in the execution of the anticipatory search warrant, Roy was observed at all times while he traveled to Defendant's residence. On a previous purchase of drugs by SA Wambach from Roy, he stated to SA Wambach that he needed to travel for approximately twelve miles each way to obtain the marijuana—this was the same distance Roy travelled to Defendant's residence while under surveillance to make the controlled buy now at issue in the present motion. Law enforcement maintained constant visual surveillance of Roy and Roy's vehicle from the time he left the casino until he reached the driveway of Defendant's residence, ensuring that he made no stops and had no opportunities to obtain the marijuana on the way to Defendant's residence. Law enforcement officers, posted in the brush on the south side of Highway 1, later alerted the remaining law enforcement agents when Roy was leaving the Defendant's residence in his vehicle. Then, law enforcement again maintained constant visual surveillance of Roy and Roy's vehicle from the time he left the driveway until he returned to SA

Wambach's vehicle, ensuring that he made no stops and had no opportunities to obtain the marijuana on the way back from Defendant's residence. A confidential informant had separately provided previous information that the source for Roy's marijuana was a residence on Minnesota State Highway 1 and stated that the source's first name was "Keith." Another independent source of information had stated that Keith Donnell sold marijuana in multiple pound amounts. Indeed, a subsequent administrative search subsequently showed that the residence for Keith Donnell was in fact the residence on Highway 1 to which Roy travelled under constant police surveillance on August 13, 2011, to make a controlled drug buy.

Finally, Defendant argues that Roy never informed law enforcement where he obtained the drugs. Presumably, Defendant again relies on the cases he cites dealing with confidential informants who knowingly participated in executing the controlled buys. Although a confirmation by Roy that he received the drugs from Defendant would have further bolstered a showing of probable cause, such a confirmation was not required because the totality of circumstances in this case demonstrates that a reasonably prudent person would find that a fair probability existed that contraband or evidence of a crime would be found at Defendant's residence.

The anticipatory search warrant set out a specific triggering condition that had to be satisfied before it could be executed. Under, the totality of circumstances in this present case, the condition was met and a fair probability existed that contraband or the evidence of a crime would be found at Defendant's residence. Because the trigger condition for the anticipatory search was satisfied and probable cause supported the execution of the search warrant, the Court finds that the search and seizure in this case did not violate Defendant's Fourth Amendment rights. Additionally, because the search did not violate Defendant's Fourth Amendment rights,

the Court need not further discuss any "fruit of the poisonous tree" arguments regarding his subsequent post-Miranda statement. See United States v. Burnett, No. 09-4003, 2009 WL 2835751, *5 (W.D. Mo. Aug. 31, 2009) (concluding that because the search and seizure of evidence did not violate defendant's constitutional rights, "there [was] no fruit-of-a-poisonous-tree argument to be made"). Therefore, the Court recommends that Defendant's motions to suppress any evidence obtained as a result of the search warrant or suppress any Mirandized statements made after the execution of the search warrant be denied.[6]

### III.   CONCLUSION

1.   Based on the foregoing, and all the files, records and proceedings herein,

   **IT IS HEREBY RECOMMENDED** that Defendant's Motions to Suppress Evidence or Statements Obtained as a Result of Search and Seizure [Docket Nos. 20, 23, 25, and 26] be denied.

Dated: February 2, 2012                           s/Leo I. Brisbois
                                                  LEO I. BRISBOIS
                                                  United States Magistrate Judge

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 16, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.

---

[6] At the hearing on each party's discovery motions, Defendant withdrew his motions to suppress on the basis that the police who executed the search warrant lacked law enforcement jurisdiction on the Red Lake Reservation (Docket Nos. 25 and 26).